IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES HAYDEN, | ) | CASE NO. |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **COMPLAINT** |
| 2K GAMES, INC., a Delaware corporation, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| TAKE-TWO INTERACTIVE SOFTWARE, | ) | |
| INC., a Delaware corporation, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

JAMES HAYDEN ("HAYDEN"), by and through undersigned counsel, for his Complaint

against Defendants, 2K GAMES, INC, ("2K"), and TAKE-TWO INTERACTIVE SOFTWARE,

INC, ("TAKE-TWO"), states as follows:

**<u>NATURE OF ACTION, JURISDICTION, AND VENUE</u>**

1.      This is a civil action for copyright infringement pursuant to 17 U.S.C. § 501 *et seq.*

2.      This case is about the unauthorized use of HAYDEN's registered tattoos in

Defendants' highly successful video game, known as NBA 2K21 (herein the "Infringing Game")

and Defendants' resulting ongoing willful violation of HAYDEN's rights.

3.      HAYDEN seeks preliminary and permanent injunctive relief and appropriate

damages from the Court.

4.      This Action is proper under the Copyright Act of 1976, as amended, 17 U.S.C. §§

101 *et seq.* (the "Copyright Act").

5.      The Court has original subject matter jurisdiction over HAYDEN's Copyright claims pursuant to 17 U.S.C. §§ 101 *et seq.* and 28 U.S.C. §§ 1331 and 1338.

6.      The Court has personal jurisdiction over Defendants under, *inter alia*, O.R.C. § 2307.382.

7.      Upon information belief, each of the Defendants has transacted business in this state.

8.      Further, each of Defendants have acted in concert to develop, promote, distribute and market the Infringing Game, and to contract to supply the Infringing Game in this State.

9.      Copies of the Infringing Game have been sold in this State.

10.     By infringing HAYDEN's copyrights and/or inducing others to infringe HAYDEN's copyrights, each of the Defendants has caused injury in this state.

11.     Venue is proper in this District under 28 U.S.C. § 1391(b)(2), as a substantial part of the events that gave rise to this Complaint occurred in this District.

12.     For example, HAYDEN created the tattoos in issue in Cleveland, Ohio.

13.     In the alternative, venue is also proper under 28 U.S.C. § 1391(b)(1) and 1391(c).

## PARTIES

14.     HAYDEN is a tattoo artist who does business as FOCUSED TATTOOS, having an address at 1846 Coventry Road, Cleveland Heights, Ohio, 44106.

15.     Upon information and belief, Defendant 2K is a Delaware corporation with a principal address at 10 Hamilton Landing, Novato, CA 94949. According to public records, the registered office address is 2710 Gateway Oaks Drive, Suite 150N, Sacramento, CA 95833.

2

16.     Upon information and belief, Defendant, TAKE-TWO is a Delaware corporation with a principal address at 622 Broadway, New York, NY 10012. According to public records, the registered office address is 2710 Gateway Oaks Drive, Suite 150N, Sacramento, CA 95833.

17.     Upon information and belief, TAKE-TWO is a major developer, publisher and marketer of interactive entertainment and video games around the globe, including the Infringing Game.

18.     Upon information and belief, 2K sells and ships video games around the globe, including the Infringing Game.

19.     Upon information and belief, each of the named Defendants has a direct financial interest in the creation and sale of the Infringing Game.

20.     Upon information and belief, each of the named Defendants is connected with the matters alleged herein and is liable to HAYDEN.

21.     Upon information and belief, each Defendant was the agent, servant, employee, partner and/or joint venturer of each of the other Defendants; the acts of each Defendant were within the scope of such agency, service, employment, partnership or joint venture; in committing the acts and omissions alleged herein, each Defendant acted with knowledge, permission and/or consent of every other Defendant; and each Defendant aided, abetted, and/or conspired with the other Defendants in the acts and omissions alleged herein.

**FACTUAL ALLEGATIONS**

22.     HAYDEN is an established visual artist and lifelong resident living in this District.

23.     Among HAYDEN's artistic creations are original tattoos for the most recognized basketball players in the world.  HAYDEN'S clients include superstars such as LeBron James,

Shaquille O'Neal, Kyrie Irving, Collin Sexton, Daniel Gibson, Shannon Brown, Danny Green, Dion Waiters, Mo Williams, and Tristan Thompson.

24.     HAYDEN'S tattoos are original and expressive.

25.     HAYDEN'S tattoos are reduced to a tangible medium.

26.      HAYDEN is recognized as one of the world's most talented tattoo artists.

27.     For example, among tattoo artists around the world, the publication "Complex" named HAYDEN as one of "50 Tattoo Artists You Need to Know." *See* **Exhibit A**, 1/05/15 Article.

28.     In addition, HAYDEN has been commissioned to create art by some of the most successful companies in the world.  For example, Nike, Inc. commissioned HAYDEN to create the limited edition Artist Series Nike Air Max LeBron VII sneakers, and since then, has repeatedly recognized and sought out HAYDEN's artistic talent.  *See* **Exhibit B**, 8/22/09 Article.

**HAYDEN's Original Designs**

29.     LeBron James is a star player for the Los Angeles Lakers, a former star player for the Cleveland Cavaliers, and one of the most popular NBA players of all time.

30.      Mr. James has several tattoos.

31.     Over approximately the past 15 years, HAYDEN has created many tattoos for LeBron James.

32.     Danny Green is a player for the Cleveland Cavaliers.

33.     Mr. Green also has several tattoos.

34.     Over approximately the past decade, HAYDEN has created various tattoos for Mr. Green.

35.     Tristan Thompson has been an NBA player since 2011 and has played for numerous teams, including the Cleveland Cavaliers, Boston Celtics, Sacramento Kings, Indiana Pacers, Chicago Bulls, and Los Angeles Lakers.

36.     Mr. Thompson also has several tattoos.

37.     Over approximately the past decade, HAYDEN has created various tattoos for Mr. Thompson.

### HAYDEN's Works

#### Gloria

38.     For example, in or around 2007 HAYDEN created the design below (herein the "Gloria Design") which appears on Mr. James's right shoulder:



39.     HAYDEN is the author of the Gloria Design.

40.     The Gloria Design is an original work of authorship by HAYDEN.

41.     The Gloria Design is expressive.

42.     The copyright in the Gloria Design is registered, having the Registration Number VAu 1-263-888.

5

43. HAYDEN has not transferred the copyright to the Gloria Design.

44. HAYDEN owns a valid and enforceable copyright in the Gloria Design.

<u>Lion</u>

45. In addition, HAYDEN created the following design that appears on Mr. James's chest (herein the "Lion Design"):



46. HAYDEN is the author of the Lion Design.

47. The Lion Design is an original work of authorship by HAYDEN.

48. The Lion Design is expressive.

49. The copyright in the Lion Design is registered, having the Registration Number VAu 1-271-044.

50. In a related case in which HAYDEN accused Defendants of infringing the Lion Design, Defendants alleged that HAYDEN should have disclosed certain third-party or public domain work that HAYDEN used as a source of inspiration to the Copyright Office when he applied for registration. Upon request by the Court in that case, the Copyright Office issued an opinion stating that if the Copyright Office knew of HAYDEN's sources of inspiration, the registration specialist would have "inquired into whether the derivative work contained new creative authorship with a sufficient amount of original expression[.]" (Case 1:17-cv-02635-CAB,

6

Dkt. # 231-1, p. 13.) The Register further opined that "[h]aving reviewed the two works after receiving the Court's Request, the Register considers Mr. Hayden's modifications . . . to be sufficiently creative to warrant registration." (*Id.*) The Register concluded that "Mr. Hayden may likewise file supplementary registration applications to correct the omissions . . . by excluding the preexisting designs from his claims to copyright." (*Id.*) Mr. Hayden intends to file a supplementary registration application to exclude the preexisting sources of inspiration.

51.     HAYDEN has not transferred the copyright to the Lion Design.

52.     HAYDEN owns a valid and enforceable copyright in the Lion Design.

<u>Shoulder Stars</u>

53.     In addition, HAYDEN created the following design on the shoulder of Mr. James (herein the "Shoulder Stars Design"):



54.     HAYDEN is the author of the Shoulder Stars Design.

55.     The Shoulder Stars Design is an original work of authorship by HAYDEN.

56.     The Shoulder Stars Design is expressive.

57.     The copyright in the Shoulder Stars Design is registered, having the Registration Number VAu 1-270-802.

58.     HAYDEN has not transferred the copyright to the Shoulder Stars Design.

59.     HAYDEN owns a valid and enforceable copyright in the Shoulder Stars Design.

<u>Fire</u>

60.     In addition, HAYDEN created the flames on Mr. Green in the following photograph (herein the "Fire Design"):



61.     HAYDEN is the author of the Fire Design.

62.     The Fire Design is an original work of authorship by HAYDEN.

63.     The Fire Design is expressive.

64.     The copyright in the Fire Design is registered, having the Registration Number VAu 1-287-552 and a Supplementary Registration Number Vau001365279.

65.     In a related case, HAYDEN accused Defendants of infringing the Fire Design. Upon request by the Court in that case, the Copyright Office issued an opinion stating that "Mr. Hayden's depiction of flames added sufficient creative authorship to be registered as a derivative work." (Case 1:17-cv-02635-CAB, Dkt. # 231-1, p. 17.)

66.     HAYDEN has not transferred the copyright to the Fire Design.

67.     HAYDEN owns a valid and enforceable copyright in the Fire Design.

<u>Scroll</u>

68.     In addition, HAYDEN created the designs surrounding the scroll on Mr. Green in the following photograph (herein the "Scroll Design"):

8



69.     HAYDEN is the author of the Scroll Design.

70.     The Scroll Design is an original work of authorship by HAYDEN.

71.     The Scroll Design is expressive.

72.     The copyright in the Scroll Design is registered, having the Registration Number VAu 1-287-545 and a Supplementary Registration Number VAu 1-365-277.

73.     In a related case, HAYDEN accused Defendants of infringing the Scroll Design. Upon request by the Court in that case, the Copyright Office issued an opinion stating that "Mr. Hayden added more than a sufficient amount of creative authorship, which includes a character at the top of the scroll, additional cloud-like design elements, and shading throughout the design, to be registered as a derivative work." (Case 1:17-cv-02635-CAB, Dkt. # 231-1, p. 18.)

74.     HAYDEN has not transferred the copyright to the Scroll Design.

75.     HAYDEN owns a valid and enforceable copyright in the Scroll Design.

Brother's Keeper

76.     In addition, HAYDEN created the following design on Mr. Thompson (herein the "Brother's Keeper Design"):

9



77.     HAYDEN is the author of the Brother's Keeper Design.

78.     The Brother's Keeper Design is an original work of authorship by HAYDEN.

79.     The Brother's Keeper Design is expressive.

80.     The copyright in the Brother's Keeper Design is registered, having the Registration Number VAu 1-292-453.

81.     In a related case in which HAYDEN accused Defendants of infringing the Brother's Keeper Design, Defendants alleged that HAYDEN should have disclosed certain public domain work that HAYDEN used as a source of inspiration to the Copyright Office when he applied for registration. Upon request by the Court in that case, the Copyright Office issued an opinion stating that if the Copyright Office knew of HAYDEN's sources of inspiration, the registration specialist would have "inquired into whether the Brother's Keeper T.T. tattoo design contained a sufficient amount of new creative authorship to warrant registration." (Case 1:17-cv-02635-CAB, Dkt. # 231-1, p. 16.) The Register further opined that "[h]aving reviewed the two works after receiving the Court's Request, the Register believes that the non-standard shapes and shading surrounding the phrase constitute a sufficient amount of additional creative authorship to be registered as a derivative work." (*Id.*) The Register concluded that "Mr. Hayden may likewise file supplementary registration applications to correct the omissions . . . by excluding the preexisting designs from his

claims to copyright." (*Id.*) Mr. Hayden intends to file a supplementary registration application to exclude the preexisting sources of inspiration.

82.     HAYDEN has not transferred the copyright to the Brother's Keeper Design.

83.     HAYDEN owns a valid and enforceable copyright in the Brother's Keeper Design.

**HAYDEN's Copyright Registrations**

84.     HAYDEN has secured Registration No. VAu 1-263-888 for the Gloria Design, (herein the "'888 Registration").

85.     The '888 Registration has an Effective Date of Registration of September 6, 2016.

86.     The '888 registration certificate is attached hereto as **Exhibit C.**

87.     The '888 Registration is a valid registration.

88.     HAYDEN has secured Registration No. VAu 1-271-044 for the Lion Design, (herein the "'044 Registration").

89.     The '044 Registration has an Effective Date of Registration of September 6, 2016.

90.     The '044 registration certificate is attached hereto as **Exhibit D.**

91.     The '044 Registration is a valid registration.

92.     HAYDEN has secured Registration No. VAu 1-270-802 for the Shoulder Stars Design, (herein the "'802 Registration").

93.     The '802 Registration has an Effective Date of Registration of September 6, 2016.

94.     The '802 registration certificate is attached hereto as **Exhibit E.**

95.     The '802 Registration is a valid registration.

96.     HAYDEN has secured Registration Nos. VAu 1-287-552 and VAu 1-365-279 for the Fire Design, (herein the "'552 Registration" and "'279 Registration" respectively).

97.     The '552 Registration has an Effective Date of Registration of August 11, 2017.

98.     The '552 and '279 registration certificates are attached hereto as **Exhibit F.**

99.     The '552 and '279  Registrations are valid registrations.

100.    HAYDEN has secured Registration Nos. VAu 1-287-545 and VAu 1-365-277 for the Scroll Design, (herein the "'545 Registration" and "'277 Registration" respectively).

101.    The '545 Registration has an Effective Date of Registration of August 11, 2017.

102.     The '545 and '277 registration certificates are attached hereto as **Exhibit G.**

103.    The '545 and '277 Registrations are valid registrations.

104.    HAYDEN has secured Registration No. VAu 1-292-453 for the Brother's Keeper Design, (herein the "'453 Registration").

105.    The '453 Registration certificate is attached hereto as **Exhibit H**.

106.    The '453 Registration is a valid registration.

107.    The works discussed in paragraphs 38 through 102 are herein collectively referred to as "HAYDEN's Works:"

108.    HAYDEN'S Works have been found in a related case to be "original and entitled to protection." *See Hayden v. 2K Games, Inc.*, 629 F. Supp. 3d 736, 745 (N.D. Ohio 2022).

**Defendants Had Access to HAYDEN'S Works and Knew HAYDEN Was the Author**

109.    Prior to the launch of the Infringing Game, Defendants had been accused of infringing HAYDEN's Works with respect to six previously launched basketball video games in the related case entitled *Hayden v. 2K Games, Inc.*, Case No. 1:17-cv-2635 (N.D. Ohio). This case was pending when Defendants launched the Infringing Game.

110.    Prior to the launch of the Infringing Game, Defendants had access to each of HAYDEN's Works.

111.    Prior to the launch of the Infringing Game, Defendants knew or should have known that HAYDEN's Works were original works of authorship.

112.    Prior to the launch of the Infringing Game, Defendants knew or should have known that, as original works of authorship, one or more of HAYDEN's Works were entitled to copyright protection.

113.    Prior to the launch of the Infringing Game, Defendants knew or should have known that HAYDEN owned the rights to HAYDEN's Works.

114.    Prior to the launch of the Infringing Game, Defendants did not seek or obtain permission from HAYDEN to use any of HAYDEN's Works in the Infringing Game.

## The Infringing Game

115.    On or around September 4, 2020, 2K released a basketball video game titled "NBA 2K21."

116.    Since then, NBA 2K21 has been available for sale throughout the United States, including throughout this District.

117.    NBA 2K21 also prominently features LeBron James, Danny Green, and Tristan Thompson avatars.

118.    The tattoos on the LeBron James, Danny Green, and Tristan Thompson avatars that appear in NBA 2K21 are the same or substantially similar to HAYDEN's Works.  NBA 2K21 includes clear, detailed, and unauthorized reproductions of HAYDEN's Works, as depicted below:

13







119.    The improvements and additions to NBA 2K21 make this game significantly different than Defendants' previously released games NBA 2K16, NBA 2K17, NBA 2K18, NBA 2K19, and NBA 2K20.

120.    Upon information and belief, tattoos are a significant area of interest for 2K21 players.

121.    Upon information and belief, players of NBA 2K21 often choose to play with LeBron James, the Cleveland Cavaliers, the Los Angeles Lakers, or other teams on which LeBron James is rostered.

122.    Although Defendants knew or should have known that HAYDEN was the author and owner of each of HAYDEN'S Works, Defendants never asked or obtained permission to use, reproduce, or create derivative works based on HAYDEN's Works in the Infringing Game.  Nor has HAYDEN ever been asked or agreed to the distribution of copies of HAYDEN's Works in the Infringing Game, or to the use of any of his other exclusive rights.

**Defendants' Widespread Copying**

123.    Defendants distribute copies of the Infringing Game throughout the United States including in this District through several channels, including video games stores, online retailers, such as Amazon.com, and through video-game console online platforms, such as the X-Box Marketplace.

124.    When a customer purchases a copy of the Infringing Game, they commonly receive a plastic case containing a plastic disc or they download the game directly from the internet to their game console.

125.    Each disc or download contains a copy of one or more computer programs containing the instructions for the video game console (*e.g*., an Xbox One) to operate the game.

126.    One or more of the computer programs within the Infringing Game reproduce HAYDEN's Work on the user's screen.

127.    The tattoos that appear on the players in copies of the Infringing Game are the same, or substantially similar to, HAYDEN's Works.

128.    As such, each copy of the Infringing Game contains a copy of HAYDEN's Works and/or one or more unauthorized derivative works.

129.    Further, each time a customer plays the Infringing Game, the computer programs are loaded in the random access memory (RAM) of the customer's video game console, resulting in yet another copy and/or unauthorized derivative work of HAYDEN's Works being made each and every time the Infringing Game is played.

130.    As the user plays the Infringing Game, the NBA players appear on the screen. As the NBA players appear and move on the screen, the display of tattoos is constantly adapted on

the screen.  The foregoing adaptation results in the creation of derivative works of HAYDEN's Works.

131.    The foregoing copying, distribution, and creation of derivative works of HAYDEN's Works is not authorized.

132.    Defendants' unauthorized copying, distribution, and creation of derivative works of HAYDEN's Works violates HAYDEN's rights and harms HAYDEN.

### Defendants' Sales

133.    Upon information and belief, each of the Defendants has received significant revenues in connection with the Infringing Game.

134.    On information and belief, the Infringing Game drove revenues for the Defendants in 2020 and 2021, selling over 10 million copies by May 2021.[1]

135.    On information and belief, the Infringing Game also amplified the Defendants' player base and increased recurrent spending amongst its player base by 73% from the previous year.[2]

136.    Upon information and belief, TAKE-TWO's revenues increased 9% to a record $3.37 billion and its net income increased by 46% to $589 million the year it released the Infringing Game.[3]

137.    The reproduction and copying of HAYDEN's Works on the avatars of LeBron James, Danny Green, and Tristan Thompson in copies of the Infringing Game is a contributing factor to the sales of the Infringing Game and drives a meaningful portion of Defendants' profits.

---

[1] https://www.gamesindustry.biz/take-two-hits-usd3-37bn-revenue-in-record-year
[2] https://www.gamesindustry.biz/take-two-hits-usd3-37bn-revenue-in-record-year
[3] https://www.gamesindustry.biz/take-two-hits-usd3-37bn-revenue-in-record-year

## COUNT I
## DIRECT COPYRIGHT INFRINGEMENT
## 17 U.S.C. §§ 106(5) AND 501

138.    HAYDEN incorporates by reference and restates each of the allegations in the preceding paragraphs of this Complaint as though fully set forth herein.

139.    HAYDEN owns valid and enforceable copyrights in HAYDEN's Works.

140.    Defendants infringed HAYDEN's copyrights by reproducing HAYDEN's Works, in whole or in part, without authorization from HAYDEN, in violation of 17 U.S.C. §106.

141.    Defendants infringed HAYDEN's copyrights by distributing copies of HAYDEN's Works, in whole or in part, without authorization from HAYDEN, in violation of 17 U.S.C. § 106.

142.    Defendants infringed HAYDEN's copyrights by creating derivative works from HAYDEN's Works without authorization from HAYDEN, in violation of 17 U.S.C. § 106.

143.    Through their conduct averred in the previous paragraphs, Defendants have knowingly and willfully infringed HAYDEN's copyrights in their works by publicly displaying HAYDEN's Works without authorization and in violation of 17 U.S.C. §§106(5) and 501.

144.    Defendants knew or should have known that their conduct infringed HAYDEN's copyrights and are thereby liable for willful infringement.

145.    Defendants have obtained a direct financial benefit from the foregoing infringing activities while declining or failing to exercise their right and ability to stop or limit same.

146.    HAYDEN is entitled to damages for Defendants' infringement in an amount to be proven at trial, including both the actual damages suffered by HAYDEN and Defendants' profits attributable to the infringement.   *See* 17 U.S.C. § 504.

147.    Alternatively, upon election before final judgment is entered, HAYDEN is entitled to recover statutory damages.  *Id*.

19

148.    Further, Defendants' past and continuing infringement of HAYDEN's copyrights has caused and will continue to cause irreparable injury to HAYDEN.  Unless restrained and enjoined, Defendants will continue to commit such acts of infringement.  Monetary damages are not adequate to compensate HAYDEN for such inflicted and threatened injuries, entitling him to additional remedies, including temporary and permanent injunctive relief, pursuant to 17 U.S.C. § 502, and an order impounding and destroying any and all infringing materials, pursuant to 17 U.S.C. § 503.

## COUNT II
## INDIRECT COPYRIGHT INFRINGEMENT

149.    HAYDEN incorporates by reference and restates each of the allegations in the preceding paragraphs of this Complaint as though fully set forth herein.

150.    In addition to directly infringing HAYDEN's copyrights, Defendants have contributorily infringed and/or are vicariously liable for infringing or inducing the infringement of HAYDEN's exclusive rights in HAYDEN's Works by knowingly controlling, supervising, directing, causing, encouraging, inducing and/or materially contributing to the copying or distribution of copies of or creation of derivative works of HAYDEN's Works.  For example, when Defendants market and sell the Infringing Game to customers, Defendants are vicariously or contributorily liable for the resulting direct copyright infringement by people who play the Infringing Game.

151.    Defendants have obtained a direct financial benefit from the foregoing infringing activities while declining or failing to exercise their right and ability to stop or limit same.

152.    HAYDEN is entitled to damages for Defendants' infringement in an amount to be proven at trial, including both the actual damages suffered by HAYDEN and Defendants' profits attributable to the infringement.  *See* 17 U.S.C. § 504.

153.    Alternatively, upon election before final judgment is entered, HAYDEN is entitled to recover statutory damages.  *Id*.

154.    Further, Defendants' past and continuing infringement of HAYDEN's copyrights has caused and will continue to cause irreparable injury to HAYDEN.  Unless restrained and enjoined, Defendants will continue to commit such acts of infringement.  Monetary damages are not adequate to compensate HAYDEN for such inflicted and threatened injuries, entitling him to additional remedies, including temporary and permanent injunctive relief, pursuant to 17 U.S.C. § 502, and an order impounding and destroying any and all infringing materials, pursuant to 17 U.S.C. § 503.

## **PRAYER FOR RELIEF**

WHEREFORE, HAYDEN demands that:

A.  Defendants, their agents, servants, employees, attorneys, representatives, successors and assigns and all persons, firms, or corporations in active concert or participation with Defendants be enjoined and restrained preliminarily and permanently from:

  i.    copying, distributing, publicly displaying, publicly performing, using, or creating derivative works from HAYDEN's Works in any way, including for any purpose;

  ii.    facilitating, enabling or inducing the copying, distributing, publicly displaying, publicly performing, using or creating of derivative works of any of HAYDEN's Works by, for, or on behalf of, any videogame consumers;

B.  An order be issued impounding or destroying any and all infringing materials pursuant to 17 U.S.C. § 503;

21

C.  An accounting be directed to determine Defendants' profits resulting from its activities and that such profits be paid over to HAYDEN, increased as the Court finds to be just under the circumstances of this case;

D.  HAYDEN recover all damages he has sustained as a result of Defendants' activities;

E.  An order be issued awarding HAYDEN punitive damages in a sum to be determined at trial;

F.  HAYDEN recover exemplary damages;

G.  HAYDEN recover maximum statutory damages pursuant to 17 U.S.C. § 504;

H.  HAYDEN recover from Defendants HAYDEN's costs of this action, reasonable counsel fees, and prejudgment and post-judgment interest; and

I.  HAYDEN have all other and further relief as the Court may deem just and proper under the circumstances.

Dated: August 31, 2023

By: */s/ Andrew Alexander*

John Cipolla (Ohio Bar No. 0043614)
Daniel McMullen (Ohio Bar No. 0034380)
Todd Tucker (Ohio Bar No. 0065617)
Andrew Alexander (Ohio Bar No. 0091167)
CALFEE, HALTER & GRISWOLD LLP
The Calfee Building
1405 East Sixth Street
Cleveland, Ohio 44114-1607
Telephone: (216) 622-8200
Facsimile: (216) 241-0816
jcipolla@calfee.com
dmcmullen@calfee.com
ttucker@calfee.com
aalexander@calfee.com

*Of Counsel*

Kimberly A. Pinter (Ohio Bar No. 0084277)
CALFEE, HALTER & GRISWOLD LLP
The Calfee Building
1405 East Sixth Street
Cleveland, Ohio  44114-1607
Telephone: (216) 622-8200
Facsimile: (216) 241-0816
kpinter@calfee.com

## PLAINTIFF'S DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands

a jury trial.

Dated: August 31, 2023

By: */s/ Andrew Alexander*
John Cipolla (Ohio Bar No. 0043614)
Daniel McMullen (Ohio Bar No. 0034380)
Todd Tucker (Ohio Bar No. 0065617)
Andrew Alexander (Ohio Bar No. 0091167)
CALFEE, HALTER & GRISWOLD LLP
The Calfee Building
1405 East Sixth Street
Cleveland, Ohio 44114-1607
Telephone: (216) 622-8200
Facsimile: (216) 241-0816
jcipolla@calfee.com
dmcmullen@calfee.com
ttucker@calfee.com
aalexander@calfee.com

*Of Counsel*

Kimberly A. Pinter (Ohio Bar No. 0084277)
CALFEE, HALTER & GRISWOLD LLP
The Calfee Building
1405 East Sixth Street
Cleveland, Ohio  44114-1607
Telephone: (216) 622-8200
Facsimile: (216) 241-0816
kpinter@calfee.com